ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **RICA INDUSTRIAL PARK ASSOCIATION, INC.** <br> DEMANDANTE(S)-RECURRIDA(S) | | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **CAGUAS** |
| V. | **KLCE202400682** | Caso Núm. **CG2023CV01857** (702) |
| **SERVIMETAL, LLC Y OTROS** <br> DEMANDADA(S)-PETICIONARIA(S) | | Sobre: <br><br> Cobro de Dinero |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 15 de julio de 2025.

Comparece ante este Tribunal de Apelaciones, **SERVIMETAL, LLC** (**SERVIMETAL**) mediante *Petición de Certiorari* instada el 20 de junio de 2024. En su recurso, nos solicita que revisemos las dos (2) *Órdenes* decretadas el 20 de mayo de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas.[1] Mediante dichas decisiones judiciales, el foro *a quo*: (i) dio por admitido un *Requerimiento de Admisiones* cursado el 7 de marzo de 2024 por **RICA INDUSTRIAL PARK ASSOCIATION, INC.** (**RICA**); y (ii) le anotó la rebeldía a **SERVIMETAL**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

### - I -

El 9 de junio de 2023, **RICA** interpuso una *Demanda* sobre incumplimiento de contrato, cobro de dinero y enriquecimiento injusto

---

[1] Dichos dictamenes judiciales fueron notificados y archivados en autos el 21 de mayo de 2024. Apéndice de la *Petición de Certiorari,* págs. 151- 152 y 159- 160.

Número Identificador:
SEN2025_____

contra **SERVIMETAL**.[2] Expuso que el 9 de octubre de 2001, los dueños de varios solares localizados en el Río Cañas Industrial Park en Caguas incorporaron una asociación nombrada **RICA INDUSTRIAL PARK ASSOCIATION, INC. (RICA)** con el fin de atender el mantenimiento de las áreas comunes. Elucidó que, como parte del acuerdo entre las partes, se fijó una cuota de mantenimiento a ser satisfecha por cada dueño de solar para costear los gastos de mantenimiento. Especificó que para el año 2008, luego de varios incidentes de seguridad, los miembros de **RICA** validaron instalar medidas de control de acceso y vigilancia para la protección de las propiedades y empleados. Asimismo, convinieron construir una caseta de seguridad que está en uso desde el 2013 y se obligaron a un aumento de la cuota. Particularizó que **SERVIMETAL** posee dos (2) propiedades y efectuó los pagos de mantenimiento hasta algún momento entre los años 2018- 2019.

En consecuencia, el 11 de julio de 2023, **RICA** presentó *Moción Sometiendo Emplazamientos* en la cual adujo que **SERVIMETAL** había sido debidamente emplazada el 10 de julio de 2023.[3]

Más tarde, el 9 de agosto de 2023, **SERVIMETAL** presentó *Solicitud de Desestimación* en la cual argumentó que no es propietario de los solares descritos en la *Demanda* y no es miembro de **RICA**.[4] Por lo que, la causa de acción deja de exponer una reclamación que justifique que **SERVIMETAL** deba remediar a **RICA**. Contendió que la dueña de los solares es otra entidad comercial (pueden existir similitudes en los nombres). A los pocos días, el 11 de agosto de 2023, **RICA** presentó su *Oposición a Solicitud de Desestimación*.[5] Sustancialmente, precisó que las alegaciones contenidas en la *Demanda* eran claras, específicas, y notifican claramente cuál es el remedio solicitado.

El 8 de septiembre de 2023, **SERVIMETAL** presentó *Réplica a "Oposición a Solicitud de Dese[s]timación"* acompañada de una *Certificación de*

---

[2] Apéndice de la *Petición de Certiorari*, págs. 1- 4.
[3] *Íd.*, págs. 7- 9.
[4] *Íd.*, págs. 10- 15.
[5] *Íd.*, págs. 16- 31.

*Propiedad Inmueble* despachada el 25 de agosto de 2023 por la señora Ana L. Robles Alago, registradora del Registro de la Propiedad, acreditando quién es el titular del inmueble en controversia.[6] El 14 de septiembre de 2023, **RICA** presentó una *Solicitud de Término para Presentar Dúplica a Réplica* en la cual solicitó: se atendiera la *Réplica a "Oposición a Solicitud de Dese[s]timación"* como una solicitud de sentencia sumaria; se le concediera un término de treinta (30) días para presentar su oposición; o en su defecto, una enmienda a la *Demanda.*[7]

Posteriormente, el 4 de enero de 2024, **RICA** presentó su *Breve Dúplica a Réplica.*[8] Poco después, el 22 de enero de 2024, **SERVIMETAL** presentó *Solicitud para que se Tenga por No Puesta la "Breve Dúplica a Réplica" Por Tardía.*[9] Entonces, el 29 de febrero de 2024, se dictó *Orden* declarando no ha lugar a la *Solicitud de Desestimación* presentada en agosto de 2023 por **SERVIMETAL.**[10]

Más adelante, el 18 de marzo de 2024, **RICA** presentó *Solicitud de Anotación de Rebeldía.*[11] Detalló que en conformidad con la Regla 10.1 de las de Procedimiento Civil, **SERVIMETAL** debió presentar su alegación responsiva dentro de los diez (10) días siguientes al decreto declarando no ha lugar su petitorio sobre desestimación. Esto es, debió haber sido presentada en o antes del 11 de marzo de 2024. Arguyó que, ante esa realidad, habiendo transcurrido el plazo, procedía la anotación de la rebeldía a **SERVIMETAL.** Ese mismo día, **SERVIMETAL** presentó una *Solicitud de Reconsideración* aludiendo, entre otras cosas, que faltaba un tercero.[12] Consecuentemente, el 19 de marzo de 2024, se dispuso *Orden* concediendo veinte (20) días para replicar a **RICA.**[13]

El 21 de marzo de 2024, **RICA** presentó *Moción en Reacción a Solicitud de Reconsideración y en Solicitud de Autorización para Presentar Primera*

---

[6] Apéndice de la *Petición de Certiorari*, págs. 32- 37.
[7] *Íd.*, págs. 38- 40.
[8] *Íd.*, págs. 41- 56.
[9] *Íd.*, págs. 57- 58.
[10] Apéndice de la *Petición de Certiorari*, págs. 59- 60.
[11] *Íd.*, págs. 73- 74.
[12] *Íd.*, págs. 75- 79.
[13] *Íd.*, págs. 80- 81.

*Demanda Enmendada*.[14] Acompañó su escrito con una *Primera Demanda Enmendada*.

A continuación, el 1 de abril de 2024, **RICA** presentó *Moción Solicitando que se Tenga por Admitidos Requerimientos de Admisiones Cursados a la Parte Demandada*.[15] Razonó que había decursado los veinte (20) días dispuestos por la Regla 33 de las de Procedimiento Civil para contestar bajo juramento. El 8 de abril de 2024, **SERVIMETAL** presentó su *Oposición a "Moción para que se Tenga por Admitidos los Requerimientos de Admisiones" (SUMAC 27)*.[16] Manifestó que no procedía que se dieran por admitidos los requerimientos de admisiones, toda vez que falta una parte indispensable. Paralelamente, **SERVIMETAL** presentó *Oposición a "Solicitud de Anotación de Rebeldía"*.[17] Disputó que el petitorio de anotación de rebeldía se realizó dentro del tiempo que tenía para presentar su reconsideración. Así, el 11 de abril de 2024, **RICA** presentó *Breve Réplica a Oposición a Moción Solicitando que se Tengan por Admitidos los Requerimientos de Admisiones Cursados a la Parte Demandada*.[18]

El 21 de mayo de 2024, se promulgaron las *Órdenes* recurridas. En desacuerdo, el 5 de junio de 2024, **SERVIMETAL** presentó una *Solicitud de Reconsideración (SUMAC Núm. 32 y 36)*.[19] Acompañada de su *Contestación de Demanda* y *Contestación a Requerimiento de Admisiones*.[20] Acto seguido, se expidió *Orden* expresando: "[n]o ha lugar. Fue atendida en la Entrada 33".[21]

Inconforme, el 20 de junio de 2024, **SERVIMETAL** recurrió ante este foro revisor mediante *Petición de Certiorari*. En su escrito, señala el(los) siguiente(s) error(es):

> Erró el TPI al dictar la *Orden* de 5 de junio de 2024, mediante la cual declaró "No Ha Lugar" la *Reconsideración* presentada por Servimetal solicitando reconsideración de la anotación de rebeldía cuando no se configuraron los

---

[14] Apéndice de la *Petición de Certiorari*, págs. 82- 91.
[15] *Íd.*, págs. 92- 133.
[16] *Íd.*, págs. 134- 141.
[17] *Íd.*, págs. 142- 145.
[18] Apéndice de la *Petición de Certiorari*, págs. 146- 148.
[19] *Íd.*, págs. 161- 172.
[20] *Íd.*, págs. 173- 178 y 179- 199.
[21] *Íd.*, págs. 200- 201.

fundamentos para anotarla y sí se configuraron las circunstancias para dejar sin efecto la misma toda vez que Servimetal compareció al pleito y se ha defendido activamente. Por lo que, las circunstancias específicas favorecen que la misma sea levantada.

Erró el TPI al dictar la *Orden* de 5 de junio de 2024, mediante la cual declaró "No Ha Lugar" la *Reconsideración* presentada por Servimetal para que se deje sin efecto la admisión táctica de los Requerimientos de Admisiones toda vez que estaba presentada una solicitud de reconsideración en torno a cierta denegatoria de solicitud de desestimación, falta parte indispensable, la Parte Peticionaria contestó los requerimientos y las circunstancias específicas no ameritan que se den por admitidos. Además, las circunstancias favorecían que el TPI permitiese el retiro de la admisión tácita en la medida que no causaría perjuicio a la Parte Recurrida ni ésta así lo ha demostrado.

El 24 de junio de 2024, pronunciamos *Resolución* concediendo un período de diez (10) días para mostrar causa por la cual debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado. El 2 de julio de 2024, **RICA** presentó una *Oposición a Recurso de Certiorari Bajo la Regla 37 del Reglamento del Tribunal de Apelaciones*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[22] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[23]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[24]

---

[22] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[23] *Íd.*
[24] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).

Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[25]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[26] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[27] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

(1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
(2) en asuntos relacionados a privilegios evidenciarios;
(3) en casos de anotaciones de rebeldía;
(4) en casos de relaciones de familia;
(5) en casos revestidos de interés público; o
(6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[28]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[29]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[30] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

---

[25] *Íd.*
[26] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[27] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[28] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[29] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra.*
[30] *Íd.*

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[31]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[32] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[33] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[34] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[35]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[36] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[37]

---

[31] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[32] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[33] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[34] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[35] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.
[36] *García v. Asociación*, 165 DPR 311, 322 (2005).
[37] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

## - B – *Rebeldía*

La figura jurídica de la *rebeldía* se refiere a "la posición procesal en que se coloca la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir con su deber procesal".[38] Nuestro ordenamiento procesal permite que se declare en *rebeldía* a una parte en cuatro(4) instancias, a saber: (1) por no comparecer al proceso después de haber sido debidamente emplazada; (2) por no contestar o alegar dentro del término concedido por ley, habiendo comparecido mediante alguna moción previa de dónde no surja la intención clara de defenderse; (3) por negarse a descubrir su prueba después de habérsele requerido mediante los métodos de descubrimiento de prueba, o (4) simplemente cuando la parte ha incumplido con alguna orden del tribunal.[39]

Uno de los propósitos del mecanismo de la *rebeldía* es desalentar el uso de la dilación como estrategia de litigación. Este concepto se encuentra instituido en la Regla 45.1 de las de Procedimiento Civil de 2009 en la cual se dispone:

> Anotación
>
> Cuando una parte contra la cual se solicite una sentencia para conceder un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o Secretaria anotará su rebeldía.
> El tribunal, a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).
> Esta anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).
> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.[40]

La consecuencia jurídica de anotar la rebeldía a una parte en un pleito será "que se den por admitidas las aseveraciones de las alegaciones afirmativas" correctamente incluidas en la *Demanda*.[41] Si bien existe una

---

[38] Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, Lexis Nexis, (2017), págs. 327.
[39] *Id.,* págs. 327- 328.
[40] 32 LPRA Ap. V, R. 45.1.
[41] *Martínez Rodríguez v. Lang Correa*, 2023 TSPR 137; 212 DPR ____ (2023); *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93 (2002).

política judicial que prefiere que los casos se vean en sus méritos, **no se puede descartar que tanto los litigantes como el resto de la sociedad tienen un interés en que los casos se adjudiquen dentro de un periodo de tiempo razonable**.[42]

De otro lado, la Regla 45.3 de las de Procedimiento Civil de 2009 estatuye la facultad de un tribunal para dejar sin efecto una anotación de rebeldía por *causa justificada*. Asimismo, autoriza que se deje sin efecto la anotación luego de que se haya dictado sentencia. Nuestro Tribunal Supremo ha dilucidado que los criterios inherentes a la Regla 49.2 de las de Procedimiento Civil de 2009 sobre solicitud de relevo de una sentencia dictada en rebeldía son: (1) si el peticionario tiene una buena defensa en sus méritos; (2) el tiempo que media entre la sentencia y la solicitud de relevo; (3) y el grado de perjuicio que pueda ocasionar a la otra parte la concesión del relevo de sentencia.[43]

En cualquier caso, aunque la facultad de un foro de instancia para dejar sin efecto una anotación de rebeldía al amparo de la Regla 45.3 de las de Procedimiento Civil de 2009 se enmarca en la existencia de justa causa, se debe interpretar liberalmente, resolviéndose cualquier duda a favor de que se deje sin efecto la anotación o la sentencia en rebeldía, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos.[44]

En definitiva, al ejercer su discreción en los casos en que se solicita levantar una anotación de rebeldía, los jueces y juezas de los foros de primera instancia deben procurar un balance entre la deseabilidad de dar por terminados los pleitos y que estos se resuelvan en sus méritos.[45] Esto es, en nuestra jurisdicción impera "una clara política pública judicial de que los casos se ventilen en sus méritos".[46] "Ausente el perjuicio que pudiera

---

[42] *Menéndez Lebrón v. Rodríguez Casiano*, 203 DPR 885 (2023).

[43] *Neptune Packing Corp. v. The Wackenhut Corp.*, 120 DPR 283, 294 (1988).

[44] *Rivera Figueroa v. Joe's European Shop, supra,* págs. 591-592; *Díaz v. Tribunal Superior,* 93 DPR 79, 87 (1966).

[45] *Neptune Packing Corp. v. The Wackenhut Corp., supra,* pág. 294.

[46] *Menéndez Lebrón v. Rodríguez Casiano, supra*; *Sierra Quiñones v. Rodríguez Luciano,* 163 DPR 738, 745 (2005).

ocasionar a la otra parte, se debe propiciar la adjudicación de los pleitos en sus méritos".[47]

### - C – *Requerimiento de Admisiones*

La Regla 33 de las de Procedimiento Civil de 2009 pauta lo concerniente al *requerimiento de admisiones*. En lo pertinente, la norma procesal enuncia:

> (a) *Requerimiento de admisión*. A los efectos de la acción pendiente únicamente, una parte podrá requerir por escrito a cualquier otra parte que admita la veracidad de cualesquiera materias dentro del alcance de la Regla 23.1 contenidas en el requerimiento, que se relacionen con cuestiones de hechos u opiniones de hechos o con la aplicación de la Ley a los hechos, [. . .].
> Cada materia sobre la cual se requiera una admisión deberá formularse por separado. Todas las cuestiones sobre las cuales se solicite una admisión se tendrán por admitidas, a menos que dentro de los veinte (20) días de haberle sido notificado el requerimiento, o dentro del término que el tribunal concediese mediante una moción y notificación, la parte a quien se le notifique el requerimiento le notifica a la parte que requiere la admisión una contestación suscrita bajo juramento por la parte o una objeción escrita sobre la materia. [. . .]
> (b) *Efecto de la admisión*. Cualquier admisión hecha en conformidad con esta regla se considerará definitiva, a menos que el tribunal, previa moción al efecto, permita el retiro o enmienda de la admisión. Sujeto a lo dispuesto en la Regla 37, que regula las enmiendas de una orden dictada en conferencia con antelación al juicio, el tribunal podrá permitir el retiro o la enmienda de la admisión si ello contribuye a la disposición del caso en sus méritos y la parte que obtuvo la admisión no demuestra al tribunal que el retiro o la enmienda afectará adversamente su reclamación o defensa. [. . .].[48]

El *requerimiento de admisiones* no es propiamente un mecanismo de descubrimiento de prueba.[49] Empero, según comenta el tratadista Cuevas Segarra es una herramienta sencilla y económica, "de excepcional utilidad en la práctica contenciosa".[50] La norma procesal autoriza a una parte a requerirle a otra que admita la veracidad de cualquier materia que se relacione con cuestiones u opiniones de hechos o con la aplicación de la ley a los hechos, así como la autenticidad de cualquier documento que se acompañe con el requerimiento.[51] Este instrumento "persigue el propósito de aligerar los

---

[47] *Id.*
[48] 32 LPRA Ap. V, R. 33.
[49] *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 571 (1997).
[50] J. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 1000.
[51] *Íd.*

procedimientos para definir y limitar las controversias del caso y proporcionar así un cuadro más claro sobre éstas".[52]

En lo que compete, la norma procesal apresta expresamente **que la parte a la que se le cursó un *requerimiento de admisiones* tiene un límite de veinte (20) días para formular su contestación, suscrita bajo juramento, u objetar contestar, con fundamentos**.[53] El interpelado tiene un deber afirmativo de responder y efectuar las gestiones necesarias para obtener la información para admitir o negar.[54] De incumplir con el término reglamentario, las cuestiones sobre las cuales se solicitó la admisión **se tendrán por admitidas automáticamente**.[55]

En este sentido, el estatuto en cuestión no requiere que el tribunal emita una orden a esos efectos. El Máximo Foro ha expresado que con esta norma se busca evitar que una parte, mediante actuaciones que demuestren dejadez y desidia, dilate los procedimientos judiciales.[56] Además, el Tribunal Supremo ha expresado que las disposiciones de la Regla 33 de las de Procedimiento Civil no son meramente directivas, **sino mandatorias**, por lo que, se requiere su cumplimiento sustancial.[57] Del mismo modo, se ha reconocido que el *requerimiento de admisiones* puede utilizarse como base para luego solicitar una sentencia sumaria.[58] Claro está, al igual que ocurre con cualquier regla procesal, no se debe permitir que consideraciones técnicas prevalezcan en detrimento de la justicia sustancial.[59]

## - III –

**S**ERVIMETAL punteó que no es la parte llamada a saldar la deuda con **R**ICA por esta no ser la dueña titular de la propiedad. Igualmente, refutó que no procede la admisión tácita y la anotación de la rebeldía. Fundamentó que,

---

[52] *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, *supra*, pág. 571.
[53] 32 LPRA Ap. V, R. 33. (énfasis nuestro).
[54] Informe de Reglas de Procedimiento Civil, Secretariado de la Conferencia Judicial y Notarial del Tribunal Supremo de Puerto Rico (marzo 2008), pág. 363; *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 171-172 (2007).
[55] *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, *supra*, pág. 573. (énfasis nuestro).
[56] *Rivera Prudencio v. Mun. de San Juan*, *supra*, pág. 174.
[57] (énfasis nuestro).
[58] *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, *supra*, pág. 573.
[59] *Íd.*, págs. 574- 575.

en primer lugar, es necesario resolver la falta de parte indispensable, pues es Servi Realty Inc. (ahora Servi Realty, LLC), la corporación con la responsabilidad de saldar cualquier deuda pendiente con **RICA**. A esos efectos, presentó una *Certificación de Propiedad Inmueble* que muestra que Servi Realty Inc. es el titular registral. En segundo lugar, arguyó que se ha defendido activamente y tampoco ha mostrado una conducta temeraria o contumaz que justifique la anotación de rebeldía.

**RICA** reseñó que **SERVIMETAL** no presentó justa causa para no haber contestado a tiempo la *Demanda*. Añadió que, **SERVIMETAL** no aclaró en que consistió el alegado abuso de discreción por parte del foro de instancia cuando este goza de discreción. En ese sentido, **RICA** aseguró que, **SERVIMETAL** insiste en utilizar subterfugios para continuar dilatando los procedimientos y evitar pagar lo adeudado.

Por estar íntimamente relacionados, discutiremos los errores señalados de forma conjunta y es preciso apuntalar que nos encontramos ante una de las instancias que justifica nuestra intervención en la etapa en que se encuentra el caso de marras.

Notamos que los directivos de **SERVIMETAL** en múltiples ocasiones respondieron a los reclamos de **RICA** y se comprometieron a efectuar los pagos correspondientes. Es decir, el propio **SERVIMETAL** admite tácitamente que son ellos los llamados a responder por la deuda del mantenimiento. Ante los repetidos intentos de **RICA** de cobrar lo adeudado; **SERVIMETAL** respondió, pero no accionó, por lo que, la eventual consecuencia fue la presentación de la *Demanda*. Ante ese escenario, **SERVIMETAL** no puede valerse ahora de que Servi Realty Inc. es la corporación con la responsabilidad de saldar la deuda vencida, liquida y exigible.[60] Incluso, del Apéndice se desprende que el 19 de marzo de 2019, **SERVIMETAL** efectuó un pagó por la cantidad de $1,744.92 a favor de **RICA** ello por concepto de deuda de mantenimiento.[61]

---

[60] **SERVIMETAL** admitió tener balance pendiente por concepto de mantenimiento vencido desde el 2018. Apéndice de la *Petición de Certiorari*, págs. 43- 55.
[61] Apéndice de la *Petición de Certiorari*, pág. 56.

Nuestro ordenamiento jurídico procesal implanta que unas de las instancias para que el tribunal primario declare la anotación de rebeldía es cuando la parte no haya presentado una alegación responsiva dentro del plazo dispuesto o haya incumplido con alguna orden. Del mismo modo, para que un tribunal en su facultad pueda dejar sin efecto una anotación de rebeldía debe existir una causa justificada. Aun así, no se desprende de este expediente tal justa causa más allá del intento de traspasar la responsabilidad al titular registral de las propiedades comerciales que **SERVIMETAL** utiliza para sus negocios.

En lo concerniente al *requerimiento de admisiones* cursado por **RICA**, la Regla es clara e indica que todo requerimiento de admisiones debe ser contestado por escrito y bajo juramento dentro del intervalo de veinte (20) días de haberse notificado. El 7 de marzo de 2024, **SERVIMETAL** fue notificado del *requerimiento de admisiones* y al llegar la fecha límite: 27 de marzo de 2024, **SERVIMETAL** no solicitó prorroga ni contestó. Tampoco objetó tal requerimiento, por lo que, la consecuencia jurídica es darlo por admitido.

En definitiva, colegimos que no se incurrieron en los errores y no hallamos elementos en el recurso que nos persuadan para intervenir con las determinaciones judiciales del foro primario.

- IV -

Por los fundamentos antes expuestos, ***expedimos*** el auto de *Certiorari* entablado el 20 de junio de 2024; en consecuencia, ***confirmamos*** las *Órdenes* prescritas el 5 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Caguas; y ***devolvemos*** el caso al foro primario para la continuación de los procedimientos de forma compatible con nuestros pronunciamientos.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia, Sala Municipal de Caguas, puede proceder de

conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[62]

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Si bien la Juez Lebrón Nieves está conforme con el dictamen emitido; está inconforme con la demora en disponer del recurso.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[62] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.